Nicole M. Goodwin, SBN 024593
goodwinn@gtlaw.com
Robert A. Hill, SBN 033415
hillro@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 800
Phoenix, AZ  85016
Tel: (602) 445-8000
Fax: (602) 445-8100
*Attorneys for UMB Bank, N.A. as Trustee*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| UMB Bank, N.A., as Trustee, | Case No. |
| Plaintiff, | |
| v. | **VERIFIED COMPLAINT AND APPLICATION FOR APPOINTMENT OF RECEIVER AND FORECLOSURE** |
| Harvest Gold Silica, Inc., a Wyoming corporation; and Vast Mountain Development, Inc., a Nevada corporation; Solid Gold, Inc., a Wyoming corporation, Hal Bogle and Dorothy T. Bogle; J.C.H. Family Trust, an Oklahoma trust; William Joseph O'Connor; Mary C. McGrath Revocable Trust UTA July 11, 1995, an Oklahoma trust; W. M. Dennison and Mary Jane Dennison; Justin Richard O'Connor; Sandra J. Olson; The Olson Family Limited Partnership, an Oklahoma partnership; Melvin C. Bangle; John Edward Stevens; John W. Hogle, Sr.; U.S. American Resources, Inc., a Nevada corporation; First American Gold Resources Inc., a Delaware corporation; Courtney Dubois; Michael DuBois; Clayton Rollins; Lawyers Title of Arizona, Inc., an Arizona corporation; John Owen; and Conveyor Sales Company, an Arizona corporation. | |
| Defendants. | |

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

Plaintiff UMB Bank, N.A., as Trustee ("***Plaintiff***" or "***UMB***"), for its Complaint against Defendant Harvest Gold Silica, Inc. ("***HGS***" or "***Borrower***"), *et. al.* complains and alleges as follows:

1.     This Verified Complaint and Application for Appointment of Receiver and Foreclosure relates to the abject failure of a borrower to meet its obligations under operative public finance (bond) loan and trust documents pursuant to which it borrowed more than $22 million.

2.     UMB has brought suit to protect the interests of the Trust Estate affected hereby.

3.     Several Events of Default (as said term is more particularly defined in the applicable bond documents) have occurred under the applicable bond documents due to the unremedied failures of HGS to maintain solvency, pay debt service when due, and provide required reporting, thus triggering certain rights and remedies of UMB as Trustee.

4.     As of the date of filing of this Complaint, $22,040,000 in principal, exclusive of interest, costs, and attorneys' fees, is due and owing from HGS as Borrower.   HGS, however, is an insolvent entity that has no means to fund its operations, much less its obligations under the applicable bond documents.

5.     Appointment of a Receiver, and the other relief requested herein, is therefore necessary to conserve, identify and protect trust assets.

## THE PARTIES

6.     Plaintiff UMB is a national banking association that has designated Kansas City, Missouri as the location of its main office in its articles of association. Therefore, pursuant to 28 U.S.C. § 1348, *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006), and for purposes of 28 U.S.C. § 1332(a), UMB is a citizen of the State of Missouri.

7.     UMB is the trustee ("***Trustee***") for $22,040,000 of municipal bonds, which consist of $16,920,000 in IDA Tax Exempt Revenue Bonds (Harvest Gold Silica

Project – Congress, Arizona) Series 2019A (the "***Series 2019A Bonds***"), and $5,120,000 in IDA Taxable Revenue Bonds (Harvest Gold Silica Project – Congress, Arizona) Series 2019B (the "Series 2019B Bonds" and together with the Series 2019A Bonds, the "***Bonds***") issued pursuant to an Indenture of Trust dated as of July 1, 2019 (the "***Trust Indenture***").

8.     The Bonds were issued by the Arizona Industrial Authority ("***IDA***") in July 2019.  Aegis Capital Corp. ("***Aegis***") and Municipal Capital Markets Group, Inc. ("***MCMG***" and, collectively with Aegis, the "***Underwriters***") served as the underwriters for the Bonds. As the Underwriters, Aegis and MCMG offered and sold the Bonds to the bondholders.

9.     As Trustee, Plaintiff acts for the benefit of the estate established by the Trust Indenture and the beneficiaries thereof, each of which has a beneficial interest in the assets of the trust estate.

10.     Beneficiaries of the estate include Greenwich Investment Management, Inc., ("***Bondholder Representative***") which purchased the Bonds, for itself and its clients, and is the appointed Bondholder Representative.

11.     Defendant HGS is a Wyoming corporation with its principal place of business in Palmer, Texas. HGS was formed or qualified under the laws of Wyoming on November 13, 2017.

12.     Defendant Vast Mountain Development, Inc. ("***VMD***") is a Nevada corporation with its principal place of business in Dallas, Texas. Since 2013, VMD has been authorized to do business in Arizona and has been conducting business in Arizona. VMD may claim an interest in certain property described in this Verified Complaint.

13.     Defendant Solid Gold, Inc. ("***SG***") is a Wyoming corporation with its principal place of business in Dallas, Texas.  Upon information and belief, SG is under common ownership with VMD.  SG may claim an interest in certain property described in this Verified Complaint.

## DEFENDANTS WITH POTENTIAL LIENS

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

14.     Upon information and belief, Hal Bogle and Dorothy T. Bogle are residents of Dexter New Mexico.

15.     Upon information and belief, J.C.H. Family Trust is an Oklahoma trust located in Oklahoma City, Oklahoma.

16.     Upon information and belief, William Joseph O'Connor is a resident of Oklahoma City, Oklahoma.

17.     Upon information and belief, Mary C. McGrath Revocable Trust UTA July 11, 1995 is an Oklahoma Trust located in Oklahoma City, Oklahoma.

18.     Upon information and belief, W. M. Dennison and Mary Jane Dennison are residents of Oklahoma.

19.     Upon information and belief, Justin Richard O'Connor is a resident of California.

20.     Upon information and belief, Sandra J. Olson is a resident of Oklahoma.

21.     Upon information and belief, The Olson Family Limited Partnership is an Oklahoma partnership located in Edmond, Oklahoma.

22.     Upon information and belief, Melvin C. Bangle is a resident of the state of Arizona.

23.     Upon information and belief, John Edward Stevens is a resident of the state of Arizona.

24.     Upon information and belief, John W. Hogle, Sr. is a resident of the state of Arizona.

25.     Upon information and belief, U.S. American Resources, Inc., is a Nevada corporation.

26.     Upon information and belief, First American Gold Resources Inc., is a Delaware corporation.

27.     Upon information and belief, Courtney Dubois is a resident of the state of Arizona.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

4

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

28.     Upon information and belief, Michael DuBois is a resident of the state of Arizona.

29.     Upon information and belief, Clayton Rollins is a resident of the state of Arizona.

30.     Upon information and belief, Lawyers Title of Arizona, Inc. is an Arizona corporation with its principal place of business in Phoenix, Arizona.

31.     Upon information and belief, John Owen is a resident of Texas.

32.     Upon information and belief, Conveyor Sales Company is an Arizona corporation with its principal place of business in Chandler, Arizona.

33.     On information and belief, the above listed defendants have potential recorded real property, personal property, or UCC interests (collectively, "***Potential Lienholder Defendants***").

## JURISDICTION AND VENUE

34.     The Court has diversity jurisdiction over the subject matter of this action and the parties pursuant to 28 U.S.C. § 1332 because each plaintiff and each defendant are citizens of different states and the amount in controversy exceeds $75,000.00.

35.     Venue in this District is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District, the Mortgaged Leasehold Property (as defined herein) is located in this District, and one or more of the Defendants conducts business within this District.

## GENERAL ALLEGATIONS

A.    **THE BONDS AND TRUST ESTATE.**

36.     In January 2019, HGS filed with the IDA an application for bond financing in which HGS represented to the IDA, among other things, that HGS was organized to "produce and sell ecofriendly silica-based products that accelerate plant growth, boost yields, create healthier plants, and conserve water."

37.     The Board of Directors of the IDA approved the application by way of its adoption of Resolution 2019-5 during its meeting conducted on January 23, 2019.

38.     The Underwriters subsequently prepared and issued that certain *Official Statement* dated July 12, 2019. A true and correct copy of the Official Statement is attached hereto as **Exhibit A** and is incorporated herein by this reference.

39.     The IDA issued the Bonds in the initial principal amount of $16,920,000 for the Series 2019A Bonds and $5,120,000 for the Series 2019B Bonds. The Underwriters offered and sold the Bonds to the Bondholder Representative.

40.     In reliance upon the Official Statement, the Bondholder Representative purchased all of the Bonds from the Underwriters, some for its own account and some for its clients.

41.     The Bonds were issued pursuant to the Trust Indenture executed by and between the IDA and the Trustee.  A true and correct copy of the Trust Indenture is attached hereto as **Exhibit B** and is incorporated herein by this reference.

42.     In the Trust Indenture, the Issuer granted a security interest in, assigned, transferred, granted, and conveyed to UMB certain property comprising the "***Trust Estate***" for the Bonds including, but not limited to, the Issuer's in (a) the Loan Agreement (hereinafter defined); (b) the Facilities (as defined in the Trust Indenture); (c) the Project Revenues (as defined in the Trust Indenture); (d) the Assignment of Operating Agreement (hereinafter defined); (e) the Promissory Notes (hereinafter defined); (f) the Deed of Trust (hereinafter defined); and (g) any and all other real or personal property of any kind from time to time hereafter by delivery or by writing of any kind specifically conveyed, pledged, assigned or transferred, as and for additional security hereunder for the Bonds, by anyone on behalf of the IDA or with its written consent, or by or on behalf of HGS, in favor of the Trustee.  *Trust Indenture at pgs. 2-3.* HGS expressly acknowledged, accepted, and agreed to the Issuer's assignment to the Trustee of the Trust Estate.

**B.     THE LOAN AGREEMENT, PROMISSORY NOTES AND DEED OF TRUST.**

43.     Proceeds from the sale of the Bonds were subsequently loaned by the IDA to HGS (the "***Loan***") pursuant to that certain *Loan Agreement* dated as of July 1, 2019

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

(the "*Loan Agreement*") (i) to finance and/or refinance, as applicable, the costs to purchase buildings, production and support equipment for the operation, and/or equipping of the Facilities; (ii) to fund any required reserves related to the Series 2019A Bonds; (iii) to fund capitalized interest on the Bonds; and (iv) to finance costs of issuance of the Bonds (collectively, the "*Project*"). A true and correct copy of the Loan Agreement is attached hereto as **Exhibit C** and is incorporated herein by this reference.

44.    In conjunction with the Loan Agreement, HGS executed and delivered to the UMB, as Indenture Trustee, a Promissory Note dated July 18, 2019, in the original principal amount of $16,920,000 (the "*Series 2019A Promissory Note*"), and a Promissory Note dated July 18, 2019, in the original principal amount of $5,120,000 (the "*Series 2019B Promissory Note*" and collectively with the Series 2019A Promissory Note, the "*Promissory Notes*"). True and correct copies of the Promissory Notes are attached hereto as **Exhibits D-1 and D-2**, respectively, and are incorporated herein by this reference.

45.    The IDA, HGS and UMB, as Indenture Trustee, also executed and delivered that certain *Leasehold Deed of Trust, Assignment of Lease, Security Agreement, and Fixture Filing* dated as of July 1, 2019, and recorded in the Official Records of Yavapai County as Recorder's No. 2019-0036472 DOT (the "*Deed of Trust*"). The IDA and the Indenture Trustee are the "*Beneficiary*" and "*DOT Trustee*," respectively, under the Deed of Trust.  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit E** and is incorporated herein by this reference.

46.    The Deed of Trust encumbers by a lien and security interest in favor of DOT Trustee, all of the right, title, interest, and estate of HGS in and to that certain real property located in the County of Yavapai, State of Arizona, more particularly described in Exhibit A attached to the Deed of Trust (the "*Property*").

47.    That Property includes, without limitation, all of the right, title, interest and estate of HGS in and to that certain (i) *Lease* effective as of July 1, 2019, between VMD, as Landlord, and HGS, as Tenant (the "*VM Lease*"), and (ii) *Lease* effective as

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

7

of July 1, 2019, between SG, as Landlord, and HGS, as Tenant (the "**SG Lease**" and together with the VM Lease, the "**Specified Leases**"), including all extension and other options and rights now existing or hereafter arising in each case thereunder, together with any and all buildings and improvements now or hereafter erected thereon, including, but not limited to, the fixtures, attachments, appliances, equipment, machinery, and other articles attached to such buildings and improvements (the "**Leasehold Property**").  True and correct copies of the Specified Leases are attached hereto as **Exhibit F** (the VM Lease) and **Exhibit G** (the SG Lease).

48.     The Deed of Trust also operates as a security agreement pursuant to Arizona Revised Statutes Title 47, Chapter 9, § 47-9101 et seq. whereby HGS granted a security interest in "all other personal property of [HGS] located on the Leasehold Property and whether now owned or hereafter acquired or created (including equipment, inventory, goods documents, instruments, general intangibles, chattel paper, accounts, deposit accounts and contract rights, as all such terms are used in the Uniform Commercial Code as in effect in the State of Arizona ("UCC"))," all funds on deposit, future rents, insurance, and other interests set forth in the Deed of Trust's Granting Clauses (the foregoing, collectively, the "**Personal Property**").    All property encumbered by the Deed of Trust, including the Leasehold Property and the Personal Property, is referred to herein as the "**Mortgaged Leasehold Property**".

49.     Furthermore, the Deed of Trust constitutes a fixture filing under 47-9502 of the UCC which secures "all of the Mortgaged Leasehold Property which are goods which are or are to become fixtures."  *Deed of Trust at § 2.3.*

50.     HGS caused to be filed a UCC Financing Statement Acknowledgement of that interest with the Secretary of State's office of the State of Wyoming on July 18, 2019.  *See* UCC Financing Statement Acknowledgment dated July 18, 2019, attached hereto as **Exhibit H** ("**UCC Acknowledgement**") and incorporated by reference herein.

**C.      HGS' LOAN AGREEMENT COVENANTS AND DEFAULTS.**

51.     Under Section 4.01(a) of the Loan Agreement, HGS is required to "duly

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

and punctually pay, or cause to be paid, from Project Revenues, all amounts due and payable hereunder and under the [Notes] and necessary for payment of the principal of, and interest and any premium on, the Bonds at the dates and in the places and manner mentioned herein and therein."

52.     Further, under Section 4.01(d) of the Loan Agreement, HGS is required to make payments "at the times and in the amounts necessary to enable the Trustee to make the deposits called for in Section 5.04 of the Indenture."

53.     Section 5.04 of the Trust Indenture requires, in relevant part:

"FIRST: on the tenth (10th) day of each month to the Expense Fund, after taking into consideration funds on deposit in the Expense Fund, (i) commencing August 10, 2019, an amount equal to one-sixth (1/6th) of the Trustee Fees and Expenses due on the next Principal Payment Date, (ii) commencing January 10, 2021, an amount equal to one-twelfth (1/12th) of the Issuer Fees and Expenses due on the next January 1 of each year, plus (iii) any amount previously due under this paragraph that remains unpaid;

SECOND: on the tenth (10th) day of each month to the Insurance and Tax Escrow Fund, after taking into account funds on deposit in the Insurance and Tax Escrow Fund, an amount the Borrower notifies the Trustee in writing constitutes the amount necessary to pay all premiums for all insurance required to be maintained pursuant to the Loan Agreement and for all taxes or other charges for governmental services;

THIRD: on the last Business Day of every Rebate Year and continuing until the full amount is paid, to the Rebate Fund, any amount as calculated by the Arbitrage Rebate Consultant, required of the Borrower to be deposited in the Rebate Fund;

FOURTH: on the tenth (10th) day of each month, commencing August 10, 2019, for deposit in the Operating Costs Fund, an amount the Borrower notifies the Trustee in writing constitutes the amount which, together with any amount then on deposit therein, equals the amount of the Operating Costs then due and payable or due and payable within the next month as shown on the Operating Costs Fund Requisition submitted by the Borrower for such month, together with any arrearages in the payment of the Operating Costs for prior months;

FIFTH: on the tenth (10th) day of each month, commencing May

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

9

10, 2020, for deposit in the Series 2019A Interest Account and the Series 2019B Interest Account of the Bond Fund, taking into consideration funds on deposit in the Capitalized Interest Account (to be applied pro rata to the Series 2019A Bonds and Series 2019B Bonds) to be transferred on such date as set forth in Section 5.06(a) herein, and together with other amounts required to be deposited by the Borrower, (after taking into consideration earnings on the Series 2019A Interest Account and the Series 2019B Interest Account of the Bond Fund) equal to; (a) one·third (1/3) of the interest due on each series of Bonds on the next Interest Payment Date; and (b) all amounts due as to interest on each series of Bonds on the tenth (10th) day of any previous calendar month pursuant to this paragraph which have not otherwise been credited to the Series 2019A Interest Account and the Series 2019B Interest Account of the Bond Fund pursuant of this paragraph;

SIXTH: on the tenth (10th) day of each month, (i) commencing May 10, 2020, for deposit in the Series 2019B Principal Account of the Bond Fund, an amount (after taking into consideration earnings on the Series 2019B Principal Account of the Bond Fund) equal to (a) one-twelfth (1/12th) of the principal due on the Series 2019B Bonds on the next Principal Payment Date; and (b) all amounts due as to principal on each series of Bonds on the tenth (10th) day of any preceding month which have not otherwise been credited to the Series 2019B Principal Account of the Bond Fund pursuant to this paragraph, (ii) commencing May 10, 2023, an amount equal to (a) one-sixth (1/6th) of the principal due on the Series 2019A Bonds on the next Principal Payment Date; and (b) all amounts due as to principal on the Series 2019A Bonds on the tenth (10th) day of any preceding month which have not otherwise been credited to the Series 2019A Principal Account of the Bond Fund pursuant to this paragraph;. . . .

54.     In addition to making the payments required by Section 4.01 of the Loan Agreement, under Section 5.14 of the Loan Agreement HGS is required to maintain "Sufficient Sales."  "Sufficient Sales" are defined in the Loan Agreement as "with respect to any Rolling Fiscal Year, (i) the realization by the Borrower of Gross Project Revenues, less all Operating Costs, sufficient to pay Annual Debt Service on the Bonds, and (ii) a Debt Service Coverage Ratio not less than 1.30:1.00."

55.     In addition to making the aforementioned payments when due, and maintaining Sufficient Sales, HGS was also required to remain solvent during the pendency of the Loan Agreement.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

56.    Specifically, Section 5.12 of the Loan Agreement (Solvency; Adequate Capital) requires that HGS "(a) remain solvent and pay all of its indebtedness from its assets as the same become due, and (b) maintain adequate capital for the normal obligations reasonably foreseeable for a business of its size and character and in light of its contemplated business operations."

57.    These financial requirements were to be evidenced by HGS through its compliance with certain reporting requirements.  Section 5.25 of the Loan Agreement requires HGS to provide the following financial reports to UMB:

(a)    Monthly Reports – due within 45 days after the end of each month;

(b)    Quarterly Reports – commencing December 31, 2019;

(c)    Annual Report;

(d)    Annual Officer's Certification;

(e)    Management's Discussion and Analysis.

58.    In addition, Section 5.26(a) of the Loan Agreement requires HGS to deliver a Quarterly Budget to UMB.

59.    On November 1, 2020, UMB issued its first Notice of Default to HGS ("**Default Notice 1**").  A true and correct copy of Default Notice 1 is attached hereto as **Exhibit I** and is incorporated herein by this reference**.**

60.    Default Notice 1 notified HGS of certain Events of Default "[w]ithout reciting excruciating detail," and without intending to provide "an exclusive or exhaustive listing of all defaults or Events of Default under the Indenture or Loan Agreement."

61.    In particular, HGS had "failed to make the necessary payments to enable the funding required under Section 5.04 [of the Indenture] to be made in a timely fashion.  Failure to do so amounts to an Event of Default under Section 6.01(a) of the Loan Agreement."

62.    Default Notice 1 also stated that HGS had failed to achieve "Sufficient Sales" under Section 1.01 of the Loan Agreement.  The Default Notice stated that

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

"[g]iven that the deposits to the Revenue Fund are less than $20,000 and the budget for just October 2020 lists $328,184 in projected Operating Costs for the month, Sufficient Sales have not been achieved."

63.     Pursuant to Section 7.01(A)(v) of the Trust Indenture, any Event of Default under the Loan Agreement is an Event of Default under the Trust Indenture.

64.     On November 27, 2020, UMB issued another Notice of Default to HGS ("***Default Notice 2***").  A true and correct copy of Default Notice 2 is attached hereto as **Exhibit J** and is incorporated herein by this reference**.**

65.     Default Notice 2 stated that HGS had failed to provide UMB with required financial reports and other submissions as required by Sections 5.25 and 5.26(a) of the Loan Agreement, including: monthly reports; quarterly reports; the 2019 Annual Report; the Annual Officer's Certification; Management's Discussion and Analysis; and the Quarterly Budget.

66.     These failures constituted additional Events of Default under the Trust Indenture, Loan Agreement and Deed of Trust.

67.     On the same day, November 27, 2020, UMB issued another, separate Notice of Default to HGS ("***Default Notice 3***") that declared HGS was insolvent and, therefore, in violation of Section 5.12 of the Loan Agreement.  Because HGS was insolvent, an additional Event of Default had occurred pursuant to Section 6.01(f) of the Loan Agreement.   Default Notice 3 also advised HGS that the Bondholder Representative had authorized yet an additional Event of Default, pursuant to Section 5.13(b) of the Loan Agreement, due to HGS' inadequate debt service coverage ratio.  A true and correct copy of Default Notice 3 is attached hereto as **Exhibit K** and is incorporated herein by this reference.

68.     On January 12, 2021, HGS provided to UMB reports showing key financial information for the Project from the time of the Bond Offering (the "***January 2021 Financial Reports***") that, among other things, showed that from July 2019 to June 2020, HGS' gross revenues were only $384,544.67 – $30,620,303.33 less than projected

in the Official Statement.  Instead of a projected net profit of $6,081,583, HGS had a *net loss* of $4,474,268.75.

69.    From July 2020 forward, HGS' gross revenues were only $45,945 – $53,216,180 less than projected in the Official Statement.  Instead of a projected net profit of $11,783,880, HGS had a *net loss* of $1,555,689.67.

70.    None of the Events of Default identified in Default Notices 1-3 have been cured and, therefore, the Events of Default, together with other Events of Default that have occurred but not identified in Default Notices 1-3, remain outstanding and subject to UMB's enforcement of its rights and remedies set forth in the Trust Indenture, Loan Agreement, Deed of Trust and Operating Agreement.

71.    In addition to owing UMB the amounts due under the Loan, HGS is obligated to UMB for all additional accrued and accruing interest (including interest at the default rate), loan fees, attorneys' fees, costs, and any other applicable charges under the documents evidencing the Loan (collectively, the "***Loan Documents***") (collectively, all such amounts, with the amounts identified above, are referred to as the "***Indebtedness***").

**D.    THE TRUSTEE'S REMEDIES – LOAN AGREEMENT AND DEED OF TRUST.**

72.    Section 7.05(a)(i) of the Trust Indenture provides that upon the occurrence and during the continuation of an Event of Default with respect to the Bonds "the Trustee shall be entitled as a matter of right to the appointment of a receiver or receivers, with respect to [HGS] and acceptable to the Bondholder Representative, of the rents, revenues, income, products and profits related to [HGS] and the Facilities, pending such proceedings, but, notwithstanding the appointment of any receiver, trustee or other custodian, the Trustee shall be entitled to the possession and control of any cash, securities or other instruments at the time held by, or payable or deliverable under the provisions of this Trust Indenture to, the Trustee."

73.    In addition, the Deed of Trust sets forth non-exclusive remedies to which UMB is entitled, as a matter of right, to exercise. These remedies include the right to

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

have a receiver appointed over the Mortgaged Leasehold Property. *See* Deed of Trust, § 4.2.

74.     Section 4.2(f) of the Deed of Trust provides that UMB may "apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Leasehold Property as a matter of strict right and without regard to the adequacy of the security for the repayment of the obligations secured hereby, the existence of a declaration that the obligations secured hereby are immediately due and payable, or the filing of a notice of default, and Trustor hereby consents to such appointment."

75.     Section 4.2(m) of the Deed of Trust provides that UMB has the right to "have a receiver appointed to take possession of any or all of the Mortgaged Leasehold Property, with the power to protect and preserve the Mortgaged Leasehold Property and to operate the Mortgaged Leasehold Property preceding foreclosure or sale and apply the proceeds, over and above cost of the receivership against the indebtedness secured hereby."

76.     Similarly, A.R.S. § 33-702(B)(1) states that when, as here, a deed of trust provides for an assignment of rents, issues and profits from the real property and improvements covered by the deed of trust, and a default has occurred under the terms of the deed of trust, the assignment may be enforced by the appointment of a Receiver to take possession of the real property and improvements and to collect all rents, issues and profits of the real property and improvements.

77.     Here, the Deed of Trust provides for the absolute and irrevocable assignment and transfer to UMB of all rents, issues, profits, and income of the Leasehold Property.

## E.     POTENTIAL TITLE CLOUDS OR LIENS ON THE MORTGAGED LEASEHOLD PROPERTY.

78.     Each of the Potential Lienholder Defendants or their successors in interest, on information and belief, hold a potential real property, personal property, or UCC interest that purports to cloud or encumber the Mortgaged Leasehold Property.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

14

79.     Defendants Hal Poole and Dorothy T. Poole or their successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Deed recorded in the Official Records of Yavapai County at Book 189 on Page 364.

80.     Defendant J.C.H. Family Trust or its successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 963.

81.     Defendant William Joseph O'Connor or his successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 965.

82.     Defendant Mary C. McGrath Revocable Trust UTA or its successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 967.

83.     Defendants W. M. Dennison and Mary Jane Dennison or their successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 969.

84.     Defendant Justin Richard O'Connor or his successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 971.

85.     Defendant Sandra J. Olson or her successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 974.

86.     Defendant The Olson Family Limited Partnership or its successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to an Assignment recorded in the Official Records of Yavapai County at Book 3267 on Page 976.

87.     Defendants Melvin C. Bangle, John Edward Stevens, and John W. Hogle

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

of their successors in interest may hold a real property interest in the Mortgaged Leasehold Property pursuant to a Memorandum of Agreement recorded in the Official Records of Yavapai County at Book 4407 on Page 873.

88.    Defendant U.S. American Resources, Inc., or its successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Memorandum of Purchase Agreement recorded in the Official Records of Yavapai County at Book 4420 on Page 512.

89.    Defendant First American Gold Resources Inc. or its successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Quitclaim Deed recorded in the Official Records of Yavapai County at Book 2961 on Page 749.

90.    Defendant Courtney Dubois or her successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Quitclaim Deed recorded in the Official Records of Yavapai County at Book 4540 on Page 727.

91.    Defendant Michael DuBois or his successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Quitclaim Deed recorded in the Official Records of Yavapai County at Book 4540 on Page 728.

92.    Defendant Clayton Rollins or his successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Quitclaim Deed recorded in the Official Records of Yavapai County at Book 4572 on Page 342.

93.    Defendant Lawyers Title of Arizona, Inc. or its successors in interest may hold an interest in the Mortgaged Leasehold Property pursuant to a Deed of Trust and Assignment of Rents with Security Agreement recorded in the Official Records of Yavapai County at Book 4818 on Page 699.

94.    Defendant John Owen may claim an interest in the Mortgaged Leasehold Property as evidenced by UCC filings numbered 201700359406 and 201700351935 in the state of Arizona and filings numbered 170034659994 and 170034659378 in the state of Texas.

95.    Defendant Conveyor Sales Company or its successors in interest may hold

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

an interest in the Mortgaged Leasehold Property pursuant to UCC filings numbered 201700359406 and 201700351935 in the state of Arizona and filings numbered 170034659994 and 170034659378 in the state of Texas.

96. Defendant VMD may hold an interest in the Mortgaged Leasehold Property pursuant to the Operating Agreement (defined herein).

97. In the event of default, UMB has the right to foreclose the Deed of Trust and to take the Mortgaged Leasehold Property free and clear of any purported opposed real property, personal property, or UCC interest.

**F. OPERATING AGREEMENT.**

98. On July 1, 2019, VMD and HGS entered into that certain ("***Operating Agreement***") wherein HGS, as the lessee of certain mining claims identified in Exhibit A to the Operating Agreement, engaged VMD as the ("***Operator***") responsible for conducting, directing, and controlling Operations in the Contract Area (as each term is defined in the Operating Agreement). A true and correct copy of the Operating Agreement is attached hereto as **Exhibit L** and is incorporated herein by this reference.

99. By that certain *Assignment of Operating Agreement* dated as of July 1, 2019, HGS assigned to UMB all of HGS' rights and interests, but not its obligations, in, under and to the Operating Agreement for operation of the Facilities, which assignment was expressly agreed and consent to by VMD. A true and correct copy of Assignment of Operating Agreement, attached to which is the Operator's Consent, is attached hereto as **Exhibit M** and is incorporated herein by this reference.

100. Section F of Article III of the Operating Agreement provides the following in relevant part:

> Custody of Funds. Operator shall hold for the account of HGS any funds of HGS advanced or paid to the Operator for the conduct of Operations hereunder and such funds shall remain the funds of HGS until used for their intended purpose or otherwise returned to HGS or applied toward the payment of debts as provided in Article V.B.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

> Access to Contract Area and Records. Operator shall, except as otherwise provided herein, permit HGS, at HGS's sole risk and cost, full and free access at all reasonable times to all operations of every kind and character being conducted for HGS on or in the Contract Area and to the records of operations conducted thereon or production therefrom, including Operator's books and records relating thereto.
>
> Filing and Furnishing Governmental Reports. Operator will file, and upon written request promptly furnish copies to HGS all operational notices, reports or applications required to be filed by local, State, Federal or Indian agencies or authorities having jurisdiction over Operations hereunder. HGS shall provide to Operator on a timely basis all information requested by Operator necessary for Operator to make such filings.

101. By that certain letter dated June 23, 2022 (the "*June 23 Letter*"), the Trustee as assignee under the Operating Agreement demanded (i) an accounting of all funds received by the Operator for the conduct of and resulting from Operations; (ii) access to the Contract Area and books of the Operator; and (iii) copies of all operational notices, reports or applications required to be filed by local, State, Federal or Indian agencies or authorities having jurisdiction over Operations. No response has been received from VMD. A true and correct copy of the June 23 Letter is attached hereto as **Exhibit N**.

102. Section B of Article V of the Operating Agreement further provides, in relevant part:

> **Subordination.** Operator understands and agrees that the security and lien interest granted to Operator above, together with any other lien interest arising under applicable law in favor of the Operator, shall be and is subordinate in all respects to any lien or security interest granted to the Trustee (as defined in the Trust Indenture dated as of July 1, 2019 between the Arizona Industrial Development Authority and the Trustee). Operator shall execute, acknowledge and deliver such documents or instruments as HGS or the Trustee may from time to time request to give effect to such subordination. Operator further understands and agrees that the Trustee is a third-party beneficiary to this Section V.B.

*See also* ¶¶6-8 of Operator's Consent.

103. Section 2 of the Operator's consent attached to the Assignment of

18

Operating Agreement provides:

> The disbursement provisions contained in the Indenture shall control the disbursement of funds held thereunder for payments therefrom to Operator, notwithstanding any conflicting or contrary provisions contained in the Operating Agreement.

104.    UMB has not received any Project Revenues in the Deposit Account (as defined in the Trust Indenture) or otherwise HGS or the Operator since March 1, 2021, despite the Facilities being in continuous operation since that date.

105.    During calendar years 2021 and 2022, HGS and/or the Operator deposited or caused to be deposited on its behalf to the Deposit Account the sum total of $22,751.65 and $2,857.02.

106.    Conversely, according to HGS' Certification of Financial Statements for year-ended December 31, 2020, in particular the Operating Income and Expenses year-to-date, the Facilities generated net Project Revenues of $361,302.  Unknown to UMB is where the difference between the amounts deposited into the Deposit Account and the net Project Revenues have been deposited by HGS and the Operator.  What is known is HGS *has not* deposited or caused to be deposited on its behalf into the Deposit Account all Project Revenues from operations of the Facilities but has been withholding Project Revenues for reasons and uses unknown to UMB.  A true and correct copy of the Certification of Financial Statements executed by and received from HGS is attached hereto as **Exhibit O**.

107.    Also, of note in Operating Income and Expenses in the Certification of Financial Statements is that total expenses, $2,857,254.00, are nearly ten times (10x) Gross Profit, with inadequate detail regarding the exorbitant Fulfillment Costs, Advertising and Marketing Costs, Selling Expenses, and General & Administrative Expenses.

108.    According to ¶3 of the Operator's Consent, the Trustee "may enforce the obligations of the Operating Agreement as provided in the foregoing Assignment with the same force and effect as if enforced by Assignor and may perform the obligations of

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

19

Assignor, and the Operator will accept such performance in lieu of performance by Assignor in satisfaction of Assignor's obligations thereunder."

### FIRST CLAIM FOR RELIEF
**(Appointment of Receiver – Against HGS and VMD)**

109.    Plaintiff UMB hereby incorporates each and every allegation contained in the previous paragraphs of this Complaint as though fully set forth herein.

110.    Contemporaneously with the Issuer's issuance of the Bonds, the Issuer and UMB executed the Indenture in which the Issuer granted a security interest in, assigned, transferred, granted, and conveyed to UMB certain property comprising the Trust Estate for the Bonds including, but not limited to, the Issuer's interest in (a) the Loan Agreement; (b) the Facilities; (c) the Project Revenues; (d) the Assignment of Operating Agreement; (e) the Promissory Notes; (f) the Deed of Trust; and (g) any and all other real or personal property of any kind from time to time hereafter by delivery or by writing of any kind specifically conveyed, pledged, assigned or transferred, as and for additional security hereunder for the Bonds, by anyone on behalf of the Issuer or with its written consent, or by or on behalf of the Borrower, in favor of the Trustee. HGS expressly acknowledged, accepted, and agreed to the Issuer's assignment of the Trust Estate to UMB.

111.    The Loan Agreement was executed by and is a valid and binding agreement between the Issuer and HGS; however, all rights, interests, powers, privileges, and benefits vested to the Issuer thereunder were assigned, with HGS' express consent, to UMB as additional security for repayment of the Bonds.    As described herein, HGS is in breach of its covenants and agreements in the Loan Agreement.

112.    The Operating Agreement was executed by and is a valid and binding agreement between HGS and VMD; however, HGS assigned to UMB all of HGS' rights and interests, but not its obligations, in, under, and to, the Operating Agreement for operation of the Facilities, which assignment was expressly agreed and consented to by

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

VMD. As described herein, HGS and/or VMD have not been depositing all Project Revenues into the Deposit Account or with the Trustee, in fact none since March 1, 2021, despite ongoing operations at the Facilities. Where Project Revenues are being deposited, and their amount, is known only to HGS and VMD.

113. The Leasehold Deed of Trust grants to UMB, as beneficiary, the absolute right to, among other things, collect and apply all rents, fees, charges, accounts, income, receipts, revenues, profits, and other income of any nature derived from the Mortgaged Leasehold Property to the discharge of HGS' obligations to UMB under the Loan Documents and to have a receiver appointed to take possession of any or all of the Mortgaged Leasehold Property for the purposes set forth in Section 4.2(m) of the Leasehold Deed of Trust.

114. Appointment of Receiver will preserve property comprising the Trust Estate for the Bonds, *i.e.,* the Mortgaged Leasehold Property and Project Revenues, which is in the best interests of UMB and Bondholders and ensure proper operation of the Facilities in accordance with Arizona law.

115. Accordingly, Plaintiff UMB requests the Court enter an Order appointing a Receiver for the Mortgaged Leasehold Property, which Order provides the Receiver with all appropriate powers and duties set forth in the accompanying proposed Order Appointing Receiver and which requires HGS, VMD, and their agents and employees to:

      (a)     Turn over to the Receiver the possession of the Mortgaged Leasehold Property and the records, books of account, ledgers, budgets and all business records thereof (including, without limitation, the plans, specifications and drawings relating or pertaining to any part or all of the Mortgaged Leasehold Property), excluding any records or documents subject to any applicable privilege, wherever located and in whatever mode maintained (including, without limitation, information contained on computers and any and all software relating thereto as well as all banking

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

records, statements and canceled checks);

(b)    Turn over to the Receiver all documents which constitute or pertain to all licenses, permits or governmental approvals relating to the Mortgaged Leasehold Property;

(c)    Turn over to the Receiver all appraisals, surveys, tax assessments, photographs, and any other documents relating to or pertaining to the value and condition of the Mortgaged Leasehold Property;

(d)    Turn over to the Receiver all documents which constitute or pertain to insurance policies, whether currently in effect or lapsed, which relate to the Mortgaged Leasehold Property;

(e)    Turn over to the Receiver all construction contracts, leases and subleases, rental agreements, management agreements, franchise agreements, royalty agreements, licenses, assignments, or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to or are related to any part or all of the Mortgaged Leasehold Property;

(f)    Turn over to the Receiver all documents pertaining to past, present, or future construction of any type with respect to all or any part of the Mortgaged Leasehold Property;

(g)    Turn over to the Receiver all documents of any kind pertaining to any and all toxic chemicals or hazardous materials, if any, ever brought, used and/or remaining upon the Mortgaged Leasehold Property, including, without limitation, any and all reports, surveys, inspections, checklists, proposals, orders, citations, fines, warnings, and notices; and

(h)    Turn over to the Receiver all accounts, including bank accounts, security deposit accounts and operating accounts, rents, issues,

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

22

1   income, and profits derived from the Mortgaged Leasehold Property

2   (including, without limitation, all security deposits, advances and prepaid

3   rents, storage fees, parking fees, lease payments, merchandise sale

4   proceeds, and other income thereof) (the "Rents and Profits").

5   116.    The Order appointing a Receiver should also prevent HGS, VMD and

6   their agents or representatives from:

7           (a)     Interfering with the Receiver, directly or indirectly, in the

8   management and operation of the Mortgaged Leasehold Property, and in

9   the collection of the Rents and Profits;

10          (b)     Collecting or attempting to collect the Rents and Profits or

11  directing any person or entity to collect or attempt to collect the Rents and

12  Profits, unless expressly authorized by the Receiver in writing;

13          (c)     Expending, disbursing, transferring, assigning, selling,

14  conveying, devising, pledging, mortgaging, creating a security interest in

15  or disposing of the whole or any part of the Mortgaged Leasehold

16  Property (including the Rents and Profits thereof), without the prior

17  written consent of Plaintiff; provided, however, that nothing contained in

18  the Order shall prohibit or restrain Plaintiff from initiating and/or

19  completing a sale by judicial or nonjudicial foreclosure of the Mortgaged

20  Leasehold Property, or any portion thereof, and thereafter taking title and

21  possession thereto; and

22          (d)     Doing any act which will, or which will tend to, impair,

23  defeat, divert, prevent, or prejudice the preservation of the Mortgaged

24  Leasehold Property (including the Rents and Profits thereof) or UMB's

25  interest in the Mortgaged Leasehold Property and said Rents and Profits.

26  117.    Plaintiff UMB also requests an award of its fees and costs pursuant to the

27  Loan Documents and A.R.S. §§ 341 and 341.01 as this matter arises out of contract.

28  118.    This action is brought under A.R.S. § 33-702(8)(1), and Fed. R. Civ. P.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

23

66.

**SECOND CLAIM FOR RELIEF**
**(Breach of Promissory Notes – Against HGS)**

119.    Plaintiff UMB incorporates by this reference the entirety of the preceding allegations as if fully set forth herein.

120.    HGS executed and delivered to the UMB, as Indenture Trustee, the Promissory Notes.

121.    UMB owns and holds the Promissory Notes.

122.    HGS has failed to pay the Promissory Notes in accordance with their terms, and UMB has elected to and does hereby accelerate payment of the respective balances owing under the Promissory Notes.

123.    HGS owes UMB the principal amount of $16,920,000 together with interest since July 18, 2019 on the Series 2019A Promissory Note.

124.    HGS owes UMB the principal amount of $5,120,000 together with interest since July 18, 2019 on the Series 2019B Promissory Note.

125.    Plaintiff UMB also requests an award of its fees and costs pursuant to the Loan Documents and A.R.S. §§ 341 and 341.01 as this matter arises out of contract.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract (Loan Agreement) – Against HGS)**

126.    Plaintiff UMB incorporates by this reference the entirety of the preceding allegations as if fully set forth herein.

127.    The Loan Agreement was executed by and is a valid and binding agreement between the Issuer and HGS; however, all rights, interests, powers, privileges, and benefits vested to the Issuer thereunder were assigned, with HGS' express consent, to UMB as additional security for repayment of the Bonds.

128.    HGS has defaulted and remains in default of its contractual obligations and covenants under the Loan Agreement including, among other things, the matters that constitute Events of Default as described in Default Notices 1-3.

129.    UMB, as Trustee for the Trust Estate, and Bondholders have suffered

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

injuries as a proximate result of the Events of Defaults on the part of HGS under the Loan Agreement, including, but not limited to, UMB's incurrence of substantial fees and expenses and unpaid Bondholders not receiving principal and interest when due on the Bonds.

130.    In light of the foregoing, UMB requests entry of a judgment adjudicating the Loan Agreement a valid and binding contract under which HGS is obligated to perform, and commanding HGS to abide by and specifically perform all obligations owed by HGS to UMB.

131.    Plaintiff UMB also requests an award of its fees and costs pursuant to the Loan Documents and A.R.S. §§ 341 and 341.01 as this matter arises out of contract.

## FOURTH CLAIM FOR RELIEF
### (Permanent Injunction – Against HGS and VMD)

132.    Plaintiff UMB hereby incorporates each and every allegation contained in the previous paragraphs of the Complaint as though fully set forth herein.

133.    As discussed above, proceeds from the sale of the Bonds were loaned by the Issuer to HGS to finance the costs purchase buildings, production, and support equipment for the operation, and/or equipping of the Facilities necessary to "produce and sell ecofriendly silica-based products that accelerate plant growth, boost yields, create healthier plants, and conserve water." The products that can be produced from the Mortgaged Leasehold Property are finite; further, HGS is a single-asset entity with no assets other than that comprising the Mortgaged Leasehold Property.

134.    To the extent HGS and/or VMD use Project Revenues for any purpose other than to pay principal and interest on the Bonds, such monies will be lost forever and, therefore, unavailable to repay the Bonds thus resulting in irreparable injury to the Trust Estate and Bondholders.  HGS and VMD will have no means with which to pay monetary damages resulting from the misuse of Project Revenues, as HGS and VMD will have no monies with which to pay same.

135.    Further, the Project Revenues constitute property of the Trust Estate for

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

the Bonds in which UMB has legal title and Bondholders have a beneficial interest, while the interests of HGS and VMD are clearly subordinate. Therefore, to the extent Project Revenues are not available to repay the Bonds, which represent Bondholders' investment in the Facilities, the harm to the Trust Estate and Bondholders will be substantial.   No harm will be incurred by Defendants HGS and VMD that was not contemplated by the Loan Documents to which they were parties or acknowledged and agreed.

136.   It is in the public interest that tax-exempt municipal bonds are repaid as provided for in the Loan Documents, especially where such as here a borrower and operator default on their respective covenants and agreements thereunder; therefore, logically the public interest will not be disserved by a permanent injunction against Defendants HGS and VMD from using Project Revenues for any purpose other than depositing same in the Deposit Account in which UMB is the beneficiary of a Deposit Account Control Agreement (as defined in the Trust Indenture).

137.   Plaintiff UMB is entitled to a permanent injunction against HGS, VMD and their members, agents, and representatives from applying Project Revenues in any manner other than to deposit same in a Deposit Account in which UMB is the beneficiary of a Deposit Account Control Agreement.

## FIFTH CLAIM FOR RELIEF
### (Accounting – Against HGS)

138.   Plaintiff UMB hereby incorporates each and every allegation contained in the previous paragraphs of the Complaint as though fully set forth herein.

139.   Pursuant to the terms and conditions of the Loan Agreement, HGS promised, among other things, to (i) provide UMB and Bondholder Representative with (a) Monthly Reports, (b) Quarterly Reports, (c) Annual Reports, (d) Annual Officer's Certificates, and (e) annual Management Discussion and Analyses; and (ii) deposit all Project Revenues derived from operations of the Facilities, including without limitation all revenues generated from the sale of products generated by the Facilities, which are to

be deposited by HGS into a Deposit Account subject to a Deposit Account Control Agreement in favor of UMB.

140.    HGS has not provided to UMB or Bondholder Representative (a) a Monthly Report since the month-ended August 31, 2020; (b) a Quarterly Report since quarter-ended December 31, 2020; (c) an Annual Report since year-ended December 31, 2020; or (d) the Annual Officer's Certificate since year-ended December 31, 2020. Further, HGS has never provided to UMB or Bondholder Representative an annual Management Discussion and Analysis.

141.    During calendar years 2021 and 2022, HGS deposited or caused to be deposited on its behalf to the Deposit Account the sum total of $22,751.65 and $2,857.02, respectively, despite the Facilities being in continuous operation during that time period.  However, according to HGS' Certification of Financial Statements for year-ended December 31, 2020, HGS incurred expenses totaling $2,857,254, without explanation as to how such expenses were funded given the paltry Project Revenues deposited in the Deposit Account.  In sum, HGS *has not* deposited or caused to be deposited on its behalf into the Deposit Account all Project Revenues from operations of the Facilities but has been withholding Project Revenues for reasons and uses unknown to UMB.

142.    Plaintiff UMB is entitled to an accounting of HGS' operations and access to all of its books, records, and financial statements.

## SIXTH CLAIM FOR RELIEF
### (Accounting – Against VMD)

143.    Plaintiff UMB hereby incorporates each and every allegation contained in the previous paragraphs of the Complaint as though fully set forth herein.

144.    Pursuant to the terms and conditions of the Operating Agreement, VMD covenanted, among other things, to allow HGS "full and free access at all reasonable access at all reasonable times to operations … and to the records of operations conducted thereon or production therefrom, including [VMD's] books and records

27

relating thereto.

145.    The Operating Agreement was subsequently assigned by HGS to UMB by way of the Assignment of Operating Agreement, which assignment agreed and consented to by VMD in the Operator's Consent.

146.    In the Operator's Consent, VMD agreed and consented, among other things:

(a)    that UMB may enforce VMD's obligations under the Operating Agreement with the same force and effect as if enforced by Issuer;

(b)    the Loan Documents are liens, claims, or charges on the Facilities prior and superior to any interest of VMD created under the Operating Agreement; and

(c)    that VMD's right to receive payments, fees and amounts pursuant to the Operating Agreement is subordinate to the rights of UMB to receive any amounts owing pursuant to the Loan Documents.

147.    During calendar years 2020 and 2021, HGS deposited or caused to be deposited on its behalf to the Deposit Account the sum total of $22,751.65 and $2,857.02, respectively, despite the Facilities being in continuous operation during that time period.  However, according to HGS' Certification of Financial Statements for year-ended December 31, 2020, HGS incurred expenses totaling $2,857,254, without explanation as to how such expenses were funded given the paltry Project Revenues deposited in the Deposit Account.  In sum, HGS *has not* deposited or caused to be deposited on its behalf into the Deposit Account all Project Revenues from operations of the Facilities but has been withholding Project Revenues for reasons and uses unknown to UMB.

148.    Plaintiff UMB is entitled to an accounting of VMD's operations and access to all of its books, records, and financial statements.

### SEVENTH CLAIM FOR RELIEF
#### (Foreclosure of the Deed of Trust – All Defendants)

149.   Plaintiff UMB incorporates by this reference the entirety of the preceding allegations as if fully set forth herein.

150.   The Deed of Trust executed by HGS provides that upon an Event of Default, UMB may, "commence and maintain an action or actions in any court of competent jurisdiction to foreclose this instrument as a mortgage." Deed of Trust § 4.2(e).

151.   The Deed of Trust incorporates by reference the Loan Agreement, such that an Event of Default by Defendant HGS as defined in the Loan Agreement likewise constitutes an Event of Default under the Deed of Trust.  Deed of Trust § 4.1(a).

152.   One or more Events of Default have occurred under the Deed of Trust and the Loan Agreement as a result of, *inter alia*, HGS' failure to pay all amounts due thereunder.

153.   Accordingly, Plaintiff UMB may foreclose the liens upon the Mortgaged Leasehold Property described in, and encumbered by, the Deed of Trust pursuant to Arizona law, including but not limited to A.R.S. §§ 33-814(E) and 33-721.

154.   UMB holds a valid security interest in the portion of the Mortgaged Leasehold Property which consists of the Personal Property, which security interest has been properly perfected by virtue of the UCC Acknowledgement.

155.   The Deed of Trust is a properly recorded fixture filing pursuant to A.R.S. § 47-9502.  Deed of Trust § 2.3.

156.   Pursuant to § 47-9601, UMB may reduce its claim to the Mortgaged Leasehold Property to judgment, foreclose or otherwise enforce the claim.

157.   UMB's interest in the Mortgaged Leasehold Property is superior to those interests purportedly held by the Potential Lienholder Defendants.

158.   UMB is entitled to receive the Mortgaged Leasehold Property free from any encumbrances, if any, claimed by Defendants.

159.   Plaintiff UMB is entitled to an award of its fees and costs from Defendant

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

29

HGS pursuant the Loan Documents and A.R.S. §§ 341 and 341.01.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff UMB respectfully requests the Court to enter judgment against HGS for:

(a)    An award in the amount of at least $22,040,000 in principal owing under the Promissory Notes;

(b)    For pre and post judgment interest at 7% on the award;

(c)    For an award of UMB's reasonable attorneys' fees pursuant to the terms of the Loan Agreement § 4.05 and A.R.S. §§ 12-341.01 and 47-9607;

(d)    For post-judgment interest on the foregoing costs and attorneys' fees at the rate of 10.0% per annum from the date of entry of judgment until payment is made in full or the maximum rate allowable by law;

(e)    For any further relief the Court deems appropriate under the circumstances.

**WHEREFORE**, Plaintiff UMB further respectfully requests the Court to enter an order (the "***Order***"):

A.    Appointing a Receiver to exercise the powers set forth in paragraphs 115 (a) through (h) above, including to:

  i.    Take possession of all Mortgaged Leasehold Property to manage, conserve, operate and protect it, and collect all Rents and Profits therefrom;

  ii.    File and prosecute all proper actions including, but not limited to, collection actions, related to HGS and VMD;

  iii.    Employ any person or firm or agent to operate, market, sell, or maintain the Mortgaged Leasehold Property, in whole or in part, if the Receiver deems it necessary or appropriate to do so;

  iv.    Immediately pay the proceeds collected from and as part of the operation of the Mortgaged Leasehold Property to Plaintiff UMB, as Trustee; and

  v.    Take such other actions as may be necessary or incidental to the

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

1   foregoing specific powers, directions, and general authorities relating to the

2   Mortgaged Leasehold Property;

3       B.      Decreeing that HGS, VMD, and their respective officers, directors,

4   general and limited partners, agents, property managers, architects, contractors,

5   subcontractors and employees, and all other persons with actual or constructive

6   knowledge of said Order and their agents and employees, except Plaintiff, shall comply

7   with the provisions of paragraph 116 above as well as take such actions and turn over

8   documents to the Receiver in accordance with the provisions set forth hereinabove and

9   incorporated by reference herein;

10      C.      Decreeing the Loan Agreement a valid and binding contract under which

11  HGS is obligated to perform, and commanding HGS to abide by and specifically

12  perform all obligations owed by HGS to UMB;

13      D.      Granting UMB a permanent injunction against HGS and VMD and their

14  respective members, agents, and representatives from applying Project Revenues in any

15  manner other than to deposit same in a Deposit Account in which UMB is the

16  beneficiary of a Deposit Account Control Agreement

17      E.      Requiring HGS and its agents and employees to provide an accounting of

18  Project Revenues from January 18, 2019 through the date the Order is entered;

19      F.      Requiring VMD and its agents and employees to provide an accounting of

20  its activities under the Operating Agreement from January 18, 2019 through the date the

21  Order is entered;

22      G.      Declaring that the Deed of Trust be adjudged to be valid and existing first

23  and prior to all other liens upon the Mortgaged Leasehold Property as security for the

24  payment of the amounts demanded in this Complaint and that the liens on the Deed of

25  Trust be foreclosed pursuant to, *inter alia*, A.R.S. §§ 33-814(E) and 33-721;

26      H.      Declaring that the Deed of Trust be adjudged to be a valid and existing

27  UCC security interest, with priority to all other UCC liens upon the portion of the

28  Mortgaged Leasehold Property constituting Personal Property.

31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

I.     Decreeing that all Mortgaged Leasehold Property amenable for sale be sold by the Sheriff of Yavapai County, Arizona, and that the proceeds of the sale be applied first to the costs and expenses of the sale, and then to the amounts due to Plaintiff UMB;

J.     For foreclosure in the principal amount of $20,040,000, plus any interest accruing since January 18, 2019;

K.     Decreeing that Plaintiff UMB, or any other party to this suit, may be the purchaser of any portion of the Mortgaged Leasehold Property at the sale; that the Sheriff execute and deliver to the purchaser a certificate of sale and deed as provided by law, and that the purchaser be given possession of that portion Mortgaged Leasehold Property upon production of the Sheriff's deed therefor;

L.     Decreeing that the Foreclosure Defendants be forever barred and foreclosed of all right, title, interest, claim or demand in and to the Mortgaged Leasehold Property, and every part thereof, as against Plaintiff UMB, except the right to redeem as provided by law;

M.     Decreeing that the Mortgaged Leasehold Property was abandoned, or may be abandoned prior to the entry of judgment, by HGS or its successors in interest and the Mortgaged Leasehold Property is not used primarily for agricultural or grazing purposes within the meaning of A.R.S. § 12-1282(A), as amended; that if the Mortgaged Leasehold Property is abandoned at or prior to the taking of judgment by HGS or its successors in interest, HGS is entitled to a redemption period of thirty (30) days after the date of the Sheriff's sales, in accordance with the statutes of the State of Arizona; and that it be decreed that creditors and all persons having liens or claims against the Mortgaged Leasehold Property, subject to the Deed of Trust, have, according to their established priorities, if any, successive five-day redemption period after the expiration of the thirty-day redemption period permitted to HGS;

N.     Awarding Plaintiff UMB its reasonable attorneys' fees and costs incurred herein; and

O.     For such other and further relief as the Court may deem just and proper.

DATED this 29th day of June, 2022.

GREENBERG TRAURIG, LLP


By: */s/ Nicole M. Goodwin*
Nicole M. Goodwin
Robert A. Hill
*Attorneys for UMB Bank, N.A. as Trustee*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA 85016
(602) 445-8000

## <u>VERIFICATION</u>

State of Minnesota_          )
                             ) ss.
County of Hennepin           )

Michael G. Slade, having first been duly sworn upon their oath deposes and says:

1.      I am Senior Vice President with the Plaintiff in this lawsuit, and as such am authorized to make this verification.

2.      I have read the foregoing Verified Complaint submitted in this matter.  To my best knowledge and belief and based on reasonable inquiry, I believe that all of the allegations contained therein are true to the best of my knowledge, except those matters alleged on information and belief, which I believe to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 28, 2022

_____
Michael G. Slade

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 800
PHOENIX, ARIZONA  85016
(602) 445-8000

35
*ACTIVE 61689830v11*